UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>,
    Government

    v.                              Case No. 14-cr-130-1-SM
                                        Opinion No. 2015 DNH 083
<u>Robert L. Pierre</u>,
    Defendant


**O R D E R**

Defendant, Robert Pierre, moves to suppress evidence he says was obtained during an unconstitutional search and seizure of his person and automobile.  Having considered the evidence presented at a suppression hearing, the briefs filed by the parties, and the argument of counsel, the court denies the defendant's motion to suppress evidence (document no. 12).


**Findings of Fact**

On February 1, 2014 at approximately 12:27 a.m., New Hampshire State Police Trooper Haden Wilber stopped a 2002 Volvo S60 in the vicinity of the University of New Hampshire, near Routes 4 and 155 in Durham.  The car was being operated by the defendant, Robert Pierre, and it was registered in New Hampshire.

Trooper Wilber was sitting in his cruiser, perpendicular to the road, and was "monitoring . . . the flow of traffic."  He

watched the defendant's vehicle drive by at a distance of approximately 25 feet, traveling approximately 40 miles per hour. Trooper Wilber observed that the driver's side window was darkly tinted and he could not see the driver as the vehicle passed him.[1]  He testified that the window was much darker than those on other cars he observed.  Suspecting that the defendant's window tinting violated New Hampshire law, the trooper pulled out and signaled the defendant to pull over, by activating his blue lights.

Trooper Wilber testified that as he caught up with the defendant's vehicle, it swerved to the right, sped up momentarily, then stopped abruptly.  As he approached the car, the defendant opened his door and explained that the driver's side window would not roll down.  Trooper Wilber observed Pierre, an African-American male in his 20s, seated behind the wheel. There were no passengers.  Wilber testified that he smelled the "distinct odor of fresh marijuana" coming from inside the passenger compartment of the vehicle when the defendant opened the door.

---

[1] Trooper Wilber wrote in his report that he "observed the front windows to the right and left of the driver were extremely tinted . . . ."  Trooper Wilber clarified in his testimony that he observed the tint only on the driver's side window before he stopped the vehicle and observed that the passenger's side window was also tinted once he approached the vehicle.

Trooper Wilber asked Pierre for his license and
registration, which he provided.  Upon questioning, Pierre told
Trooper Wilber that he had been at Chili's in Dover and was
heading to a friend's house in Durham.  Pierre was not nervous
when they first spoke, and his car was clean and orderly.  Wilber
took Pierre's identification and returned to his cruiser to run a
records check.  The records check disclosed that Pierre possessed
a valid driver's license, the vehicle was properly registered,
and there were no outstanding warrants.  The records check also
revealed that Pierre had previously been stopped, on August 26,
2012, and that a search conducted at that time revealed a glass
jar containing marijuana and a loaded 9mm handgun in his car.
Pierre was charged, on that occasion, with being a felon in
possession of a firearm in the Rockingham County Superior Court,
Docket No. 13-CR-00206.

Based on his having smelled fresh marijuana, and given the
circumstances of Pierre's prior arrest, Trooper Wilber returned
to the vehicle and ordered Pierre out of the car to conduct a
brief <u>Terry</u> search for weapons.  Pierre readily complied.
Trooper Wilber did not find a weapon but felt what he believed to
be a "wad" of cash in Pierre's left pocket.  Wilber asked Pierre
if he recently got paid from work to which Pierre answered "no."
Wilber then asked Pierre how he got the cash.  Pierre declined to

3

discuss his personal life.  Trooper Wilber then asked Pierre how
much money he had in his pocket.  Pierre first estimated that he
had $1,000.00, then clarified that he had $1,300.00 in his
pocket.

After briefly questioning Pierre, Trooper Wilber informed
him that he had smelled the odor of fresh marijuana coming from
inside the passenger compartment of the car when Pierre opened
the door.  When confronted, Pierre's demeanor changed.  He became
"animated and nervous," raised his voice, clenched his fists, and
avoided eye contact.  Pierre stated that he did not understand
what was going on, and denied Wilber's request to search his
vehicle.

Suspecting the presence of illegal drugs (marijuana), and
over Pierre's objection, Trooper Wilber impounded (seized) the
car.  Pierre was not arrested and left the scene, apparently
walking to a friend's house in Durham.  While waiting for a tow
truck, Trooper Wilber used his flashlight to look through the
passenger's side window of the vehicle, which was also darkly
tinted.  He saw a small piece of plastic, the corner of a larger
plastic baggie, on the floorboard.  Trooper Wilber believed this
to be a "corner bag" commonly used to package and distribute
drugs.  Additionally, Trooper Wilber reported that he walked to

4

the vehicle's trunk after Pierre left the scene and could smell
the odor of fresh marijuana emanating from the trunk.

When the tow truck arrived, Trooper Wilber escorted the
vehicle to the New Hampshire State Police Troop A barracks.
Trooper Gary Ingham and his canine partner, Grunt, performed a
drug sniff on the exterior of the vehicle at the barracks, about
seven hours after the stop.  Grunt alerted on the trunk of the
vehicle but not on the passenger compartment.  Later in the day,
at approximately 5:36 p.m., a state court judge issued a warrant
to search the vehicle, and, at approximately 8:24 p.m., Trooper
Wilber and another trooper executed that warrant.  In the
passenger compartment they found a black Guess jacket on the
front passenger seat.  In the jacket pockets they found 7 pills
in a clear bag, a second clear bag containing cocaine, a third
clear plastic bag containing either methylone and/or cocaine
base, and a small scale.  Inside the trunk, they found a black
Adidas drawstring bag and a dark North Face backpack.  Inside the
closed Adidas bag was a black leather Gucci handbag with a
zipper.  Inside the zipped-up Gucci bag, they found nearly an
ounce of fresh marijuana wrapped inside three separate plastic
bags, which were inside another plastic bag.  They also found
approximately 2.5 grams of heroin and a tan, rock-like substance
that was either cocaine base or methylone.  In the backpack, they

found a plastic bag containing methylone and/or cocaine base, two small digital scales, one containing marijuana residue, and a white trash bag containing a Taurus .22 caliber handgun.

The defendant was charged with one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); one count of possession of a controlled substance with intent to distribute cocaine, cocaine base, and heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of possession with intent to distribute methylone in violation of § 841(a)(1).  The defendant moved to suppress all the seized evidence as the product of an unconstitutional seizure and search.  The court held a hearing on the defendant's motion on January 29, 2015, during which the court called for additional briefing.  The parties filed supplemental memoranda on February 13 and 17, 2015.

## Discussion

The defendant challenges the legality of the initial traffic stop, his detention, the seizure of his vehicle, and the search conducted pursuant to the search warrant.

A traffic stop and detention of an automobile's occupants amounts to a seizure under the Fourth Amendment.  <u>United States</u>

6

v. Jones, 700 F.3d 615, 621–22 (1st Cir. 2012) (citing Whren v. United States, 517 U.S. 806, 809–10 (1996)). All such seizures must be "reasonable," U.S. Const. Amend. IV, and police officers conducting an investigatory stop must have at least "reasonable suspicion" that criminal activity is afoot. Jones, 700 F.3d at 621. An officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts,' justify an intrusion on a private person." Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). Officers' "hunches," unsupported by articulable facts, cannot substitute for reasonable suspicion. Id. (quoting Terry, 392 U.S. at 22).

When deciding whether an officer had reasonable suspicion warranting a brief investigatory detention, a court looks to the facts "available to the officer at the moment of the seizure or the search." Id. A court then must assess the "totality of the circumstances" to determine whether the officer had a particularized, objective basis for his or her suspicion. Jones, 700 F.3d at 621 (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).

If the officer goes beyond a brief investigatory stop and actually searches or seizes a vehicle in the absence of a warrant, the officer must have "probable cause to believe that

7

the vehicle contain[s] evidence of crime in the light of an
exigency arising out of the likely disappearance of the vehicle."
California v. Acevedo, 500 U.S. 565, 569, 570 (1991).  The
government bears the burden of proving that the officers had
probable cause to seize or search a vehicle in the absence of a
valid search warrant.  United States v. Lopez, 380 F.3d 538, 543
(1st Cir. 2004).

Turning to the stop and seizure at issue here, "review of a
Terry stop involves a two-step analysis."  United States v.
Mouscardy, 722 F.3d 68, 73 (1st Cir. 2013).  The court must first
"ascertain whether the stop was justified at its inception" and
second "determine whether the actions undertaken during the stop
[were] reasonably related in scope to the stop itself unless the
police [had] a basis for expanding their investigation."  Id.
(internal citations and quotations omitted) (alterations in
original).

Even a minor traffic violation, like the alleged illegal
window tinting in this case, will justify an officer in
conducting an investigatory traffic stop.  Topp v. Wolkowski, 994
F.2d 45, 48 (1st Cir. 1993); Bailey v. McCarthy, No. 01-82, 2002
U.S. Dist. LEXIS 1298, at *16-*18 (D. Me. Jan. 25, 2002); United
States v. Levesque, No. 94-cr-120, 1995 U.S. Dist. LEXIS 10349,

at *12 (D.N.H. July 11, 1995).  In this case, the evidence
establishes that as Pierre drove by, Trooper Wilber plainly saw a
vehicle bearing New Hampshire license plates (and, therefore,
subject to New Hampshire's window-tinting laws) with a driver's
side window tinted noticeably darker than the windows of the
other cars on the road that night, and darker than those that
Trooper Wilber generally saw on New Hampshire roads during his
extensive daily patrols.  Trooper Wilber testified that Pierre's
driver's side window was "extremely tinted, to the point where I
could not see the driver inside," despite his headlights shining
such that he could see through the driver's side windows of the
other cars passing by that night.  (Tr. at 16.)


     Trooper Wilber stopped Pierre's vehicle because he suspected
that its window tint violated New Hampshire law, which provides,
in relevant part: "It shall be unlawful to drive on any way any
motor vehicle registered in this state which has after market
tinting on the windshield or on the windows to the left and right
of the driver . . . ."  N.H. Rev. Stat. Ann. 266:58-a(III).
Trooper Wilber testified, credibly, that he suspected that the
windows were illegally tinted because they were darker than "all
the vehicles . . . with New Hampshire plates" that he had seen on
the roads in his experience in law enforcement.

Interpreting a similar Pennsylvania statute permitting window tinting if it is installed by the original equipment manufacturer but not if it is installed after market, the Third Circuit held, "Regardless of whether [the defendant's] tinted windows were installed by the manufacturer of his vehicle, the window tint provided reasonable suspicion justifying the stop." United States v. Hall, 270 F. App'x 123, 126 (3d Cir. 2008). This, the court in Hall reasoned, is because the "reasonable suspicion analysis does not deal with hard certainties, but with probabilities . . . ." Id. (internal quotation marks and citations omitted). Further, "as long as an objective review of the record evidence establishes reasonable grounds to conclude that the stopped individual has in fact violated [a] traffic-code provision, the stop is constitutional even if the officer is mistaken about the scope of activities actually proscribed . . . ." Id. (internal quotation marks and citations omitted).

Similarly here, even if Trooper Wilber was mistaken about what New Hampshire law prohibits (e.g., not all tint but only "after-market applied tint" is prohibited), or about whether the dark tint on Pierre's vehicles was applied after market, the stop still did not violate the Constitution. Given the degree of tint as Wilber saw it — that is, sufficient to prevent him from seeing the driver inside — it was objectively reasonable for him to

10

suspect that the tint may have been applied after market and, as such, that it violated New Hampshire law.[2]  See id.; Heien v. North Carolina, 135 S. Ct. 530, 536, 539 (2014) (holding that the "Fourth Amendment tolerates only reasonable mistakes, and those mistakes — whether of fact or of law — must be objectively reasonable.")

Because it was objectively reasonable for Trooper Wilber to suspect that Pierre's darker than usual window tint violated New Hampshire law, see N.H. Rev. Stat. Ann. 266:58-a, the first prong

---

[2] Federal regulations governing the permissible degree of window tint state in relevant part: "Coloring or tinting of windshield and the windows to the immediate right and left of the driver is allowed, provided the parallel luminous transmittance through the colored or tinted glazing is not less than 70 percent of the light at normal incidence in those portions of the windshield or windows which are marked as having a parallel luminous transmittance of not less than 70 percent."  49 C.F.R. 393.60(c).  Neither the Government nor the defendant cited to this regulation in their initial papers.  Trooper Wilber testified at the suppression hearing that he was not aware of any federal regulation of the degree of window tint that original equipment manufacturers may apply.  (Tr. at 71-72.)  However, Trooper Wilber's subjective understanding of the law and facts is not the standard.  Cf. Heien v. North Carolina, 135 S. Ct. 530, 539 (2014) (citing Whren v. United States, 517 U.S. 806, 813 (1996)).  Rather, the court considers and determines whether an objectively reasonable officer could have reasonably thought that the defendant's window tinting constituted a traffic code violation.  Id.  Where, as here, the defendant's windows were tinted such that Trooper Wilber could not see the operator, the court concludes that an objectively reasonable officer could have reasonably believed that a traffic code violation was being committed.

of the two part test is satisfied.  The initial detention of the car and its occupant was justified at its inception.[3]

The government does not argue, of course, that the approximately seven hours attributable to Trooper Wilber's impounding the defendant's vehicle and transporting it to the Troop A Police Barracks, prior to the dog sniff that occurred at 7:30 a.m., was time reasonably related to the traffic stop. Plainly, the initial "investigatory stop" had matured into a seizure requiring probable cause.  So, the next issue becomes whether the government has met its burden to show that Trooper Wilber had probable cause to seize Pierre's vehicle without a warrant.

Trooper Wilber testified, credibly, during the suppression hearing that he smelled the "distinct odor of fresh marijuana" coming from inside the passenger compartment of the vehicle when the defendant opened his door.  Trooper Wilber recognized the

---

[3] It was also reasonable for Trooper Wilber to take and run Pierre's identification.  See United States v. Henderson, 463 F.3d 27, 46 (1st Cir. 2006).  Where obtaining identification and running criminal history checks on a driver extends the traffic stop by only about 5 minutes, officers do not unduly extend the time of the traffic stop.  See United States v. Fernandez, 600 F.3d 56, 61-63 (1st Cir. 2010); United States v. Chaney, 584 F.3d 20, 26 (1st Cir. 2009).

smell based upon his training and experience, having conducted
over a hundred drug-related traffic stops.[4]

Trooper Wilber's credible contention that he smelled fresh
marijuana emanating from the defendant's car "provide[s] probable
cause for a search of the car for any narcotics." <u>United States
v. Taylor</u>, 162 F.3d 12, 21 (1st Cir. 1998); <u>see also</u> <u>United
States v. Staula</u>, 80 F.3d 596, 602 (1st Cir. 1996) ("The case law
is consistent that when a law enforcement officer detects the
odor of marijuana emanating from a confined area, such as the
passenger compartment of a motor vehicle, that olfactory evidence
furnishes the officer with probable cause to conduct a search of
the confined area."). <u>See generally</u> <u>U.S. v. Ross</u>, 456 U.S. 798,
825 (1982). ("If probable cause justifies the search of a
lawfully stopped vehicle, it justifies the search of every part
of the vehicle and its contents that may conceal the object of
the search.").

The defendant counters that it was not possible for Trooper
Wilber to smell fresh marijuana emanating from the defendant's

---

[4] The court necessarily rejects the defendant's argument
based on <u>Franks v. Delaware</u>, 438 U.S. 154, 155-56 (1978).  In
support of the warrant application Trooper Wilber testified
credibly, and the record evidence does not establish that any
false material statement was contained in the supporting
affidavit.

vehicle, primarily because the only marijuana found as a result
of the search of the defendant's car amounted to less than one
ounce, divided into three sealed plastic baggies that were inside
several other bags, inside a closed trunk, with no evidence of a
broken seal.  That is likely true — it would be astounding, one
would suspect, if Trooper Wilber could have smelled <u>that</u>
marijuana at that time given its packaging and location.  But the
point is not dispositive.

In a similar case recently decided in the Eleventh Circuit,
the court upheld a warrantless search of a vehicle based on the
smell of fresh marijuana emanating through an open window, even
though the only marijuana later found was contained in a plastic
bag inside the trunk.  <u>United States v. Smith</u>, No. 14-11852, 2015
U.S. App. LEXIS 44 (11th Cir. Jan. 5, 2015).  The court in <u>Smith</u>
declined the defendant's invitation to speculate on whether the
marijuana in the trunk was detectable by the officer from outside
the car because it was "possible that the marijuana could have
been in the passenger cabin immediately before the officer
approached the car . . . leaving a lingering odor."  <u>Id.</u> at *6.

Similarly, in this case, while Trooper Wilber's claim to
have smelled fresh marijuana when the defendant opened the car
door might seem implausible at first, given the absence of fresh

14

marijuana in the passenger compartment, there is record evidence
here which tends to corroborate that claim.

The facts strongly suggest that defendant was actively
engaged in dealing drugs.  He possessed $1,300.00 in cash.  The
subsequent search of the car, pursuant to the search warrant,
revealed nearly an ounce of marijuana in the trunk wrapped in
individual (distributable) packages, scales (for weighing
product), one scale containing marijuana residue, significant
quantities of other controlled substances, and a firearm.  And, a
corner baggie, often used to package drugs for distribution, was
found in the passenger compartment.  From this evidence, it is
reasonable to infer that the packaged marijuana (and, perhaps,
additional marijuana) had at some recent point been in the
passenger compartment, and that dealing in marijuana had occurred
in the passenger compartment of the car.  Trooper Wilber's claim
to have smelled the odor of fresh marijuana when defendant opened
his car door is neither "impossible" nor facially unreasonable.
The lingering smell of fresh marijuana (an issue not fully
developed by either side) cannot be ruled out under these
circumstances.  Where a trained officer credibly testifies that
he smelled fresh marijuana, and the facts tend to corroborate
that olfactory claim as being plausible, the officer's honest
perception is sufficient to establish probable cause to seize the

15

vehicle, pending an application for a search warrant, as occurred here.

The defendant also challenges whether Trooper Wilber smelled fresh marijuana emanating from the car on grounds that, had there been such a smell, the drug canine would necessarily have alerted to the passenger compartment when he later sniffed the exterior of the vehicle, approximately seven hours later.  While that argument has some appeal, there is no evidence in this record relating to the dissipation of fresh marijuana odors, but it is clear that approximately seven hours had passed since Trooper Wilber smelled fresh marijuana coming from the passenger compartment, before the canine alerted at the trunk of the car. In addition, the smell may have been more concentrated on the defendant's clothes when Trooper Wilber perceived it; the defendant was not present seven hours later.

The record could have been developed in greater detail, on either side, but, in the end, the Trooper's credible testimony that he smelled fresh marijuana when Pierre opened the car door — a claim whose plausibility tends to be corroborated by the later discovered facts — established probable cause to seize Pierre's car and detain it while the officer sought a search warrant.  The court concludes that the warrant Trooper Wilber subsequently

16

obtained was valid, as was the ensuing search.  Consequently, the evidence against Pierre was seized within the bounds of the Constitution.

### Conclusion

For the reasons given, defendant's motion to suppress evidence (document no. 12) is denied.


**SO ORDERED.**

_____

Steven J. McAuliffe
United States District Judge

April 17, 2015

cc:  Jonathan R. Saxe, Esq.
     Debra M. Walsh, Esq.
     U.S. Probation
     U.S. Marshal